FILED
2020 JUL 23 PM 4:46
CLERK
U.S. DISTRICT COURT

JOHN W. HUBER, United States Attorney (#7226)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | FELONY INDICTMENT |
|---|---|
| Plaintiff, | Count 1: 18 U.S.C. § 1341 (Mail Fraud) |
| vs. | Counts 2-3: 18 U.S.C. § 1343 (Wire Fraud) |
| GORDON HUNTER PEDERSEN, | Counts 4-7: 21 U.S.C. §§ 331(a), 333(a)(2) (Introduction of Misbranded Drugs into Interstate Commerce with Intent to Defraud and Mislead) |
| Defendant. | |

The Grand Jury alleges:

Case: 2:20-cr-00216
Assigned To : Waddoups, Clark
Assign. Date : 7/23/2020
Description:

### I. BACKGROUND

At all times relevant to this Indictment:

1. Defendant GORDON HUNTER PEDERSEN ("PEDERSEN") was a resident of Utah County, Utah.

2. My Doctor Suggests LLC was a company organized in the state of Utah in and around February 2012 with its principal place of business in Utah County, Utah. Defendant PEDERSEN was a 25% owner of My Doctor Suggests LLC.

3. GP Silver, LLC was a company organized in the state of Utah in and around May 2011 with its principal place of business in Utah County, Utah. Defendant PEDERSEN was the owner and operator of GP Silver, LLC.

## II. FEDERAL FOOD, DRUG, AND COSMETIC ACT

4. The United States Food and Drug Administration ("FDA") was the agency of the United States responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq*. The FDA protects the health and safety of the American public by ensuring drugs sold to the public are safe and effective for their intended uses and that they bear labeling that enables consumers to use the drugs in a safe manner. The FDA's responsibilities include regulating the manufacture, labeling, and distribution of all drugs and drug components shipped or received in interstate commerce. To meet those responsibilities, the FDA enforces statutes that require drugs to bear labels and labeling that enable customers to use the drugs in a safe manner and that require drugs to be manufactured in facilities registered with the Secretary of the United States Department of Health and Human Services. 21 U.S.C. §§ 352(f), 352(o), 360(c).

5. To legally introduce, deliver for introduction, or cause the delivery or introduction for delivery of a drug into interstate commerce, any person is required to comply with all applicable provisions of the FDCA and its implementing regulations found in Title 21 of the Code of Federal Regulations.

6. The FDCA's definition of "drugs" includes articles intended for use in the cure, mitigation, treatment, or prevention of disease in a person; articles (other than food) intended to affect the structure or any function of the body of a person; and articles intended for use as a component of such articles. 21 U.S.C. §§ 321(g)(1)(B)-(D).

7. The FDCA defines "label" as "a display of written, printed, or graphic matter upon the immediate container of any article," including food and drugs. 21 U.S.C. § 321(k). "Labeling" is a broader term, and is defined as "all labels and other written, printed, or graphic matter upon

any article or any of its containers or wrappers, or accompanying such article." 21 U.S.C. § 321(m). Written, printed or graphic matter on internet websites from which one can purchase an article, or linked to a website from which one can purchase an article, may be labeling for that article.

8. For the purposes of 21 U.S.C. § 360, the term "manufacture, preparation, propagation, compounding, or processing" includes repackaging or otherwise changing the container, wrapper, or labeling of any drug package in furtherance of the distribution of the drug from the original place of manufacture to the person who makes final delivery or sale to the ultimate consumer or user. 21 U.S.C. § 360(a)(1).

9. People upon first engaging in the manufacture, preparation, propagation, compounding, or processing of a drug or drugs in any establishment which they own or operate in any State are required by the FDCA to immediately register with the Secretary of Health and Human Services, through the FDA, their name, all of their places of business, all such establishments, the unique facility identifier of each such establishment, and a point of contact e-mail address. 21 U.S.C. §§ 360(b)(1) and (c)(1). Such persons are also required to annually renew their registration. 21 U.S.C. § 360(b)(1).

10. Under the FDCA, a drug is deemed misbranded if any one of the following apply:

    a. its labeling is false or misleading in any particular, 21 U.S.C. § 352(a);

    b. it is manufactured, prepared, propagated, compounded, or processed in an establishment not duly registered, or if it is not included in a list of drugs manufactured by a facility registered with the FDA, as required by 21 U.S.C. § 360, 21 U.S.C. § 352(o);

    c. it is a prescription drug and at any time prior to dispensing, the label of the drug failed to bear, at a minimum, the symbol "Rx only," 21 U.S.C. § 353(b)(4)(A);

    d. its labeling bears inadequate directions for use, 21 U.S.C. § 352(f); 21 C.F.R. § 201.5; or

    e. it is a prescription drug dispensed without a valid prescription by a licensed practitioner, 21 U.S.C. § 353(b)(1).

### III. THE SCHEME AND ARTIFICE TO DEFRAUD

11. Beginning in and around 2014 and continuing to and around April 28, 2020, within the Central Division of the District of Utah and elsewhere,

**GORDON HUNTER PEDERSEN,**

defendant herein, devised and intended to devise a scheme to defraud consumers, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts.

12. In executing and attempting to execute the scheme and artifice to defraud, and in furtherance thereof, defendant PEDERSEN:

    a. knowingly deposited and caused to be deposited in an authorized depository for mail a matter or thing to be sent and delivered by the United States Postal Service and by any private or commercial interstate carrier, according to the directions thereon, in violation of 18 U.S.C. §1341 (Mail Fraud);

    b. knowingly transmitted and caused to be transmitted, wire communications in interstate commerce in violation of 18 U.S.C. § 1343 (Wire Fraud); and

    c. introduced and cause the introduction of misbranded drugs into interstate commerce with intent to defraud and mislead, 21 U.S.C. §§ 331(a) and 333(a)(2).

### IV. OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

13. It was the object of the scheme and artifice to defraud for defendant PEDERSEN to fraudulently obtain money from consumers through false statements, misrepresentations, deception, fraudulent conduct, and omissions of material facts, and thereafter cause money to be diverted for defendant PEDERSEN's personal use and benefit.

## V. MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

14. In execution and furtherance of the scheme and artifice to defraud, defendant PEDERSEN employed the following manner and means:

15. Since at least 2014, defendant PEDERSEN promoted and sold silver products, through companies including My Doctor Suggests, LLC, and GP Silver LLC, as a treatment for various diseases, including arthritis, diabetes, influenza, pneumonia, and more recently coronavirus disease 2019 (COVID-19).

16. The silver products promoted and sold by defendant PEDERSEN list the precious metal silver as an ingredient for consumers to ingest or apply topically, and are marketed under various names, including, without limitation, "Silver Solution," "Silver Gel," "Silver Soap," and "all Natural Silver Lozenge" (collectively hereinafter, "Silver Products").

17. Defendant PEDERSEN's Silver Products qualify as "drugs" as defined in 21 U.S.C. § 321(g)(1).

18. Defendant PEDERSEN promoted Silver Products under the guise of medical licensing and authority. For example, defendant PEDERSEN often used the title "Dr." while introducing himself in promotional videos. As another example, defendant PEDERSEN claimed in his promotional videos to be a certified naturopathic doctor. Additionally, the My Doctor Suggests home page (www.mydoctorsuggests.com) contained an image of defendant PEDERSEN in a white coat with a stethoscope around his shoulders, creating the appearance of a treating physician; when in fact, defendant PEDERSEN did not hold a Doctor of Medicine (M.D.) degree, was not a certified naturopathic doctor, and was not licensed as a medical provider in the State of Utah.

19. Defendant PEDERSEN's promotions directed consumers to purchase Silver Products through websites, including the My Doctor Suggests Store Page (www.mydoctorsuggestsstore.com), where an orange digital stamp assured consumers that the store was "100% Legal."

20. The list prices on the My Doctor Suggests website ranged up to $299.95 for a gallon of the Silver Solution, the company's self-described "flagship product."

21. Through the My Doctor Suggests Store Page and other websites, defendant PEDERSEN solicited orders for Silver Products and collected money from consumers.

22. Consumers could place orders through a customer service phone line (1-866-660-9868), or by adding products to an online shopping cart, which then prompted consumers to fill out an online order form on the website to purchase products. For both options, credit card payment was accepted.

23. Defendant PEDERSEN distributed Silver Products by sending them from facilities in Utah through the U.S. mail or other common carriers throughout the United States in interstate commerce.

24. Defendant PEDERSEN utilized interstate wires in furtherance of his scheme, including the My Doctor Suggests LLC customer service phone line, the online internet storefronts and related emails, as well as promotional broadcasts through the internet and radio.

25. In early 2020, defendant PEDERSEN began fraudulently promoting his Silver Products as effective protection against, and treatment for, COVID-19 through YouTube videos, Facebook posts, podcasts, and websites.

26. Defendant PEDERSEN experienced a substantial increase in sales after he began marketing Silver Products as effective for the prevention and treatment of COVID-19.

27. There is currently no recognized cure for COVID-19, and no drug product has been proven safe and effective for the prevention, treatment, and cure of COVID-19; however, in execution and furtherance of the scheme and artifice to defraud, defendant PEDERSEN made one or more of the following false and fraudulent statements of material fact to consumers, including, without limitation, the following:

(a) On January 30, 2020, defendant PEDERSEN posted a video promotion on YouTube, entitled, "Coronavirus Best Solution! Hand Sanitizers! Structured Silver Gel from Dr. Gordon Pedersen," in which he claimed that having silver in his bloodstream would "usher" any coronavirus out of his body. Defendant PEDERSEN further explained that he was "going to go out and shake hands with people, doctors, patients, people who are infected possibly with the flu… and I'm going to have a confidence level that I have protection.";

(b) On February 3, 2020, a group called the Silver Health Institute issued a press release quoting defendant PEDERSEN as stating that, "because the Coronavirus is a virus and it has been proven that Alkaline Structured Silver will destroy all forms of viruses, it will protect people from the Coronavirus, as well as will help people recover more quickly that are suffering from it." Defendant PEDERSEN also asserted that once in the blood stream, silver nanoparticles can block the virus from attaching to their cells, and thus "prevent[] the disease totally and completely.";

(c) On February 14, 2020, in a YouTube promotional interview, defendant PEDERSEN claimed that the Silver Solution had destroyed related coronaviruses and, notwithstanding disclaimers, he expected a similar outcome against "the Wuhan version COVID-19.";

(d) On March 26, 2020, defendant PEDERSEN was interviewed on a podcast and was asked what he recommends for people considering what they "need to do" if they are prepping for the COVID-19 outbreak. He replied: "If you remember nothing else, remember this: silver in this liquid gel and aerosol form and lozenge form destroys bacteria, and viruses, and yeast, and it does it all at the same time, and there is no drug that man has made that can do the same. This is natural, that's why it can do it…If you have the silver in you, when the virus arrives, the silver can isolate and eliminate that virus." Defendant PEDERSEN also stated, "If you don't want to get a germ that's floating around there like the coronavirus, [take liquid silver] twice a day."; and

(e) On April 23, defendant PEDERSEN was interviewed on YouTube and explained, "Whenever I was around someone within six feet [while traveling], I

had a silver lozenge in my mouth. Now this works because I've taken silver and put it in a proprietary way into a lozenge."

28.  Defendant PEDERSEN also falsely and fraudulently represented to consumers that he has Ph.Ds. from Utah State University, in both Immunology and in Biology; that he is Board Certified in Anti-Aging and Regenerative Medicine; and that he holds a Master's degree in Cardiac Rehabilitation and Wellness.

## Count 1
## 18 U.S.C. §§ 1341 and 2(b)
## (Mail Fraud)

29.  All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

30.  On or about the date listed in each count below, in the Central Division of the District of Utah and elsewhere,

**GORDON HUNTER PEDERSEN,**

defendant herein, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and omissions of material facts, and for the purpose of executing such scheme and artifice and attempting so to do, did knowingly send and cause to be sent and delivered by the United States Postal Service and any private or commercial interstate carrier, a matter and thing, and did cause such matter and thing to be delivered according to the directions thereon as described for each count below:

| COUNT | DATE (on or about) | MAILING DESCRIPTION |
|---|---|---|
| 1. | 04/01/2020 | Silver Products shipped from My Doctor Suggests in American Fork, Utah to Kansas addressed to an undercover alias used by FDA Special Agent Virginia Keys. |

All in violation of 18 U.S.C. §§ 1341 and 2(b).

## Counts 2-3
## 18 U.S.C. § 1343 and 2(b)
## (Wire Fraud)

31. All of the factual allegations set forth in this Indictment are incorporated by reference and realleged as though fully set forth herein.

32. On or about the dates listed below, in the Central Division of the District of Utah and elsewhere,

**GORDON HUNTER PEDERSEN,**

defendant herein, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing said scheme and artifice to defraud, did cause to be transmitted by means of wire communication certain writings, signs and signals, that is, an interstate wire, in instances including but not limited to each count below:

| COUNT | DATE (on or about) | WIRE COMMUNICATIONS |
|---|---|---|
| 2. | 01/30/2020 | Defendant PEDERSEN posted a video promotion on YouTube, entitled, "Coronavirus Best Solution! Hand Sanitizers! Structured Silver Gel from Dr. Gordon Pedersen," in which he claimed that having silver in his bloodstream would "usher" any coronavirus out of his body. Defendant PEDERSEN further explained that he was "going to go out and shake hands with people, doctors, patients, people who are infected possibly with the flu… and I'm going to have a confidence level that I have protection." |

| 3. | 03/26/2020 | Defendant PEDERSEN was interviewed on a podcast and was asked what he recommends for people considering what they "need to do" if they are prepping for the COVID-19 outbreak. He replied: "If you remember nothing else, remember this: silver in this liquid gel and aerosol form and lozenge form destroys bacteria, and viruses, and yeast, and it does it all at the same time, and there is no drug that man has made that can do the same. This is natural, that's why it can do it…If you have the silver in you, when the virus arrives, the silver can isolate and eliminate that virus." |

All in violation of 18 U.S.C. §§ 1343 and 2(b).

## Counts 4-7
## 21 U.S.C. §§ 331(a), 333(a)(2) and 18 U.S.C. § 2(b)
## (Introduction of Misbranded Drugs into Interstate Commerce
## with Intent to Defraud and Mislead)

33. The allegations set forth in this Indictment are incorporated herein by reference and realleged as though fully set forth herein.

34. On or about April 1, 2020, in the Central Division of District of Utah and elsewhere,

**GORDON HUNTER PEDERSEN,**

defendant herein, with the intent to defraud and mislead, introduced and caused the introduction into interstate commerce of the drugs listed below, namely the silver products Alkaline Structured Silver Solution Supplement, Natural Structured Silver Mint Mouthwash, Extra Strength Structured Silver Gel, pH balanced Silver Gel with Aloe Vera, and All Natural Silver Lozenge, that were misbranded in one or more of the following ways:

    (a) within the meaning of 21 U.S.C. § 352(a), in that their labeling was false or misleading in any particular; specifically, they were labeled as dietary supplements that could prevent, treat and cure COVID-19;

    (b) within the meaning of 21 U.S.C. § 352(f)(1), in that the labeling of the drugs failed to bear adequate directions for use under which the layman could use the drug safely and for the purposes for which it was intended;

    (c) within the meaning of 21 U.S.C. §352(o), in that the drugs were not manufactured, prepared, propagated, compounded or processed in an

establishment duly registered under 21 U.S.C. § 360, and were not included in any list of drugs as required by 21 U.S.C. §360(j); and

(d) within the meaning of 21 U.S.C. § 353(b)(4)(A), in that these were prescription drugs and at no time prior to dispensing did the label of the drugs bear, at a minimum, the symbol "Rx only."

| COUNT | PRODUCT(S) | INTERSTATE COMMERCE | HOW MISBRANDED |
|---|---|---|---|
| 4. | Alkaline Structured Silver Solution Supplement | Shipped via USPS First Class Mail from My Doctor Suggests in American Fork, Utah to Kansas addressed to an undercover alias used by FDA Special Agent Virginia Keys. | 21 U.S.C. §§ 352(a), 352(f), 352(o), 353(b)(1), and 353(b)(4)(A) |
| 5. | Natural Structured Silver Mint Mouthwash | Shipped via USPS First Class Mail from My Doctor Suggests in American Fork, Utah to Kansas addressed to an undercover alias used by FDA Special Agent Virginia Keys. | 21 U.S.C. §§ 352(a), 352(f), 352(o), 353(b)(1), and 353(b)(4)(A) |
| 6. | Extra Strength Structured Silver Gel | Shipped via USPS First Class Mail from My Doctor Suggests in American Fork, Utah to Kansas addressed to an undercover alias used by FDA Special Agent Virginia Keys. | 21 U.S.C. §§ 352(a), 352(f), 352(o), 353(b)(1), and 353(b)(4)(A) |
| 7. | pH balanced Silver Gel with Aloe Vera | Shipped via USPS First Class Mail from My Doctor Suggests in American Fork, Utah to Kansas addressed to an undercover alias used by FDA Special Agent Virginia Keys. | 21 U.S.C. §§ 352(a), 352(f), 352(o), 353(b)(1), and 353(b)(4)(A) |

All in violation of 21 U.S.C. §§ 331(a), 333(a)(2); and 18 U.S.C. § 2(b).

### NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. § 1343, as set forth in this Indictment, the defendant shall forfeit to the United States of America all property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, the following:

- A MONEY JUDGMENT representing the value of any property, real or personal, constituting or derived from proceeds traceable to the scheme to defraud.

SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third person;

    (3) has been placed beyond the jurisdiction of the court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
UNITED STATES ATTORNEY

/s/ Jacob J. Strain
JACOB J. STRAIN
Assistant United States Attorney